Your argument in Escobar-Salmeron v. Moyer, Mr. Kratzer, I think we hear from you first. May it please the court, my name is Dallas Kratzer and with Margaret Lohman, I represent Edwin Escobar in this appeal and today Edwin isn't asking for a lot. He's just asking for a fair chance to pursue his claims consistent with this court's precedent and so specifically what Edwin's requesting today is first that this court reverse the award of summary judgment to the officers and that it remain these proceedings to allow him to engage in discovery, then also to reverse the denial of counsel and for this court to direct appointment of counsel in the trial court proceedings and finally to reverse the district court's dismissal of claims that weren't pleaded along with a defendant who wasn't named in the complaint. So the first thing that we want to talk about today is that here Edwin is entitled to discovery. A party is entitled to discovery before a ruling on a rule 56 motion when they haven't had an opportunity to engage in discovery and when there's discovery that's going to be essential to their claims. And here when Mr. I need this discovery. My recollection of the record is that Edwin says I want discovery. He never tells the district court what he wants, why he wants it. That's correct Judge. At 351 of the JA Edwin says that he needs discovery and that's in his response and you're correct. He does not specify what he needs and how it's going to help his case. But I think those omissions, we think those omissions are something that this court can forgive in this context because Edwin's proceeding pro se and and when we look at cases like Pledger and Putney in those cases this court has said that it's not going to hold a pro se litigant to the strict requirements of 56D. And I want to give at least some hint. I mean this is just there's no parameter whatsoever here on what the discovery would be or where it would go and how's the district court to make any determination when there's no explanation of what the discovery is supposed to entail? When we understand that that typically there there is the need to have to know what is it you're looking for. Now here we do see in the record that there is some indication of what he might be looking for. So we take the the exhibits that the government attached to their motion to dismiss or for summary judgment. And there we see that one thing that Edwin was looking for was a video of what happened in the day room. Which the day room is where is this alleged assault occurred on June 15th 2017. Where does that come up? And so that comes up in a few places. One place that we see that is at JA 61. He's asking for two videos along with pictures. And then specifically we see it at JA 68 where there's some discussion of the the need for day room video. And his requests in his prison grievances right? That that's correct. These are in his prison grievances. And they gave him everything he asked for except this day room video which they said they couldn't find. That's correct. Yes. That was all part of And you're right. At JA 68 that's where we see the quote is no record found. And that's one thing that we do want to talk about is we understand. Yes he received the medical records. He received medical records. We don't know whether it's all of them. But let's assume they are. We've received the medical records. We've received a video. Not both of the videos that he wanted. And specifically not the day room video. So when does he ever say the day room video? All I see on JA 61 is I want the camera video and the pictures. That's correct. He doesn't as I recall he does not specifically say the day room video there. But there is the discussion of I believe it's here at JA 68 to this is in the inmate hearing record. There is some there is some discussion of the day room and I cannot find it right now. But I believe there was also some discussion that there are cameras there at the day room and that that video would have been helpful. So that's what you've recited. That's your best evidence is his explanation of why he needed discovery before summary judgment. Yes that that is the best that we have in this record. And we understand that that Edwin didn't add those specifics in his response to the to the motion for summary judgment. But we think under the circumstances of having a pro se litigant like we do here. Especially one that had been already denied counsel. We can forgive a little bit of the strictly comply with Rule 5060 under again Pledger and Putney. And so one one thing is is you know so here we've got we believe that he's entitled to discovery. But even if we say that there wasn't enough of an explanation here. And that the district court did not abuse its discretion in denying discovery. We can still say that the district court shouldn't have granted summary judgment under the circumstances. Because what the court effectively did is is it viewed the evidence in the light most favorable to the officers. Here we have on one hand we have Edwin's verified complaint in which he details what happened to him. And when he's describing the incident from June 15th he. Yes yes we can judge and we can do that under 28 U.S.C. 1746. And that's that is in in the declaration itself that's attached to the end of that complaint. Edwin who was assisted by another inmate at the time cited that specific provision. So we can treat this like an affidavit. And so we have to accept all of these things as true at this day. Or I'm sorry in the summary judgment context we need to view all of these facts in the light most favorable to Edwin. And then what we had on the other side here is we had the the declarations of the two officers who were involved in this incident. In both of these Edwin's affidavit or Edwin's verified complaint and then the affidavits or declarations the officers are telling two very different stories. I understand that the officers believed that they or present in there that there was a need to to place Edwin on the ground. But in Edwin's telling of the events is he was he was slammed to the ground even after he was complying with the officer's orders. And even if there's a question of whether he was complying there's a little bit of a conflict on that point even in the record. Because we see Edwin saying that he was complying and then the officers say well he didn't comply at first then he started to comply. And that happens a couple of times. And I think a lot of the problem here is that we is the compliance with the orders was almost impossible for for Edwin. Because he was being ordered at one time to put his hands on the wall and at the same time to take his clothes off. And now this... Do we even have to get there? I mean isn't there a dispute about once he's on the ground how much force is being used and what kind of force and how are we supposed to know what's true there? We have parties just disagree about that and we don't have a video. Absolutely judge. And I think that's the narrowest ground for the opinion here is to say that when we look at the the complaint compared against the declarations, there's a material dispute of fact here. The parties aren't telling the same story and summary judgment wasn't appropriate under those circumstances. You don't have to dig into where we can have some discrepancy between those things. Is we can have a much more narrow opinion just to say that there's simply enough for a dispute of fact here. And now one of the last things that I we'd like to talk about... There are two more things that we have left. First there's the reversal of... Asking you to reverse the dismissal of unpleaded claims. I think that's a really quick one for us to talk about is in his complaint Edwin alleged just an excessive force claim against two officers and... I was a little confused about this. I thought he moved to reinstate a previous complaint, right? Which had all these extra allegations and then he filed an amended complaint that took all those out and had the more narrow complaint that we're dealing with. And the government responded to the broader allegations and he said you should ignore that. So what did the district court do wrong? And the district court said the only... Your previous allegations aren't in front of us anymore. You didn't you know replete that. We're going to take that as that you voluntarily dismissed them. What's wrong with that and what what could we do about it? I think the... So first what's wrong with that? And what's wrong with that is that by making this a voluntary dismissal that has the possibility to prejudice Edwin. Because these are claims that were brought in a previously filed suit like you mentioned Judge. And that suit was voluntarily dismissed by Edwin's counsel at that time. Now that means under rule 41 that if those claims are dismissed again that's a dismissal with prejudice. And Edwin can never pursue those claims. Those claims were not pending and that's why what we'd like the court to do is just explain that the district court to the extent the district court may have dismissed those claims. Those claims weren't before the court. It could not dismiss them and we reverse that. And I understand the confusion and I think that may have been... Rule 41 talk about actions dismissal of actions not dismissal of individual claims. I don't that might be getting too specific in the nitty-gritty but I you may not be right about this. You know that is and that's something I you know I didn't consider that that might only apply to the actions and it may not bar his claims. But I think that you know with the claims not even being before the court it would be I think that the appropriate thing to do would just be to reverse that. Just so that we avoid a fight over whether that dismissal is effective under rule 41 later. Because these just aren't before the court. Yes but let's say that rule 41 applies and subsequently bars those claims. I believe that even if the court says it's without dismissal it is a second dismissal under the rule which operates as an adjudication on the merits. And so now with the with the time that I have left is is we'd like to talk about that Edwin should have been provided counsel here. We understand that counsels only only needs to be appointed in exceptional circumstances. Which accounts for someone's education their ability to gather evidence. But but one of the more one of the most important things to come out that we have there is something that this court discussed in Jenkins. Which is comparing the So did he ask for counsel in the district court? That's correct judge. No I'm saying did he or did he not? I don't know I'm asking. Yes he he did request counsel. He filed a motion requesting counsel. That was filed I believe that was after the the operative complaint. And the judge dismissed in the district court dismissed that because in its view there wasn't a lot to do here. The complaints filed he's not going to need any more assistance right now. But the problem is That was without prejudice right? The court said right now it doesn't look like you need an attorney. You look like you've got it handled. Nothing's about to happen. But if hypothetically we agree with you and send this back he could ask for counsel. Because now this case is moving forward on summary judgment. Yes he could. And I think that under the the circumstances here considering we have you know one thing that Wisenut discussed is when you have someone who's up against you know a dispute of facts like this where you've got two sides telling a very different story. It's really important to have counsel to be able to test that through cross-examination. So I think based on that from Wisenut it would be appropriate for this court to go ahead and direct the appointment of counsel because the record is sufficiently developed there. So my time has expired and we would just like to reiterate we are asking that this court reverse the award of summary judgment. Remand for discovery and then also reverse the denial of counsel. Reverse the dismissal of unpleaded claims and direct the court to appoint counsel for Edwin so that he has an opportunity to a fair chance to pursue his claims. Thank you. Thank you very much. Now Ms. Loman is going to do the rebuttal. Is that correct? That is correct, Judge. Thank you Mr. Kretzer. Ms. Lee. Good morning, your honors. May it please the court. Sandra Lee of the Maryland Office of the Attorney General representing the two appellees, correctional officers Holland and Arendt. May I begin, your honor, by thanking the court for considering the rights of the various parties in this matter. Both the pro se, once pro se plaintiff, Mr. Edwin Escobar and the correctional officers. And let me take this opportunity also to thank opposing counsel for their participation in this proceeding and their representation of Mr. Escobar. May it please the court. The district court in this case followed this court's precedent. It considered the defendant's motion for summary judgment. It considered the plaintiff's opposition. In plaintiff's opposition, he made a blanket request for a discovery. His discovery request did not specify any facts that he would show or that he believes would raise a genuine dispute of material fact when compared with the facts in the record already. The defendants put forward a quite substantial amount of records in this case. The only thing that Mr. Escobar has pointed to in this proceeding as discovery that he requests is a video. Counsel saw something or told the court that he saw something in the record that I have not seen in the record, which is... Well, let's look at JA-61. I want the camera video and the pictures. Exactly. There was a handheld camera on Mr. Escobar after he was taken to medical and was seen by a medical provider. And when he was transported to the segregated housing pending adjustment, the standard procedure is that there is a handheld video with audio that is used to just make sure that the incarcerated individual's rights are respected. I cannot imagine that that is the video that Mr. Escobar believed he existed, that he wanted. He did get that in when the motion for summary judgment was filed, the motion to dismiss or for summary judgment was filed. And it contains important information, which I'll get to, to his admission that he did not follow the officer's orders to put his hands up. It apparently was Mr. Escobar's belief that there was a video of the area in the day room where he was strip searched. I do not see in the record any indication that there was such a video. I will represent to the court that in my experience, representing officers in the state of Maryland correctional institutions, they don't video the strip search of an incarcerated individual. There are privacy interests that an individual has. But the video that we have is a strip search. No, well, you're right. At the very end of it, let me say that in that, at the end of that video where there is the strip search, the video does not show very closely what the, what the inmate is doing. They don't, it doesn't show the, you know, the genitalia, the buttocks, the private areas. The video is held so that it does not impede, infringe upon the incarcerated individual's privacy. There, in his belief, apparently, that there was a video of this occurrence, the, the incarcerated individual asked in his, when he received the notice of inmate rule violation, asked for a copy of the video. At the adjustment hearing, the hearing officer wrote, as has been said, but let me. And I think his argument is that it is, there's a difference between saying there's no record found and no record that exists. There was no record found. Is there a record? There has never been. Well, what happens with videos is they are, if there is a video of an incident, then that video is, can be accessed in order to archive a section of it for approximately 30 days and then it gets written over in all of the institutions in the state of Maryland. I'm wandering away from the point here, your honors, but what, what Mr. Escobar, had Mr. Escobar stated in his opposition, you know, I believe the video shows something different from what the record has, has stated. That arguably would put before the district court a rule, a representation which is comparable to or sufficient to meet the requirements for a pro se individual of a rule 56D. When the handheld video was made, they were in the day room at that time? No, the handheld video is taken after the incarcerated individual has been treated by the unit that he will be in pending the hearing, adjustment hearing. It's also got an audio in it. But that's, that video is after the facts? It's after the incident. Yes, it, there is, there was no video found of the, of the use of force and the record does not, well, the record does not say anything more about whether the area was under video surveillance and that's why there was no video or whether the video had been written over. So let's just assume for purposes of argument that the, that there is not a sufficient discovery request here. So no error on that point. So that, that was the issue that the court put forward, uh, in its description of what this argument is about. And I, I, so let's, let's just assume we've answered that argument. All right. Discovery request was insufficient and we get down to the central question. Is there a disputed, uh, material fact here that would prohibit the entry of summary judgment? So as I read this case, it seems like to me it's very prototypical, these types of things. Mr. Escobar says, you know, they were asking me to do several different things and they reacted, um, with excessive force and beat me up for grins. And the, uh, defendants say, no, we didn't. Why isn't that a classical factual dispute that bars summary judgment? Your Honor, it's not a dispute that bars summary judgment because the issue, uh, on summary judgment is the, the subjective Whitley factor of whether the officer's actions were malicious, um, and with evil intent or were justified by legitimate penological concerns. And if you look at, look at what the officers were facing here. How can we tell if it was justified by legitimate, you know, penological concerns if we don't know what they did? Because Your Honor, the record is full of all of the reasons why in this prototypical type of situation, correctional officers are entitled to use a reasonable amount of force. Sure. Sure. Maybe they're entitled to take him to the ground, handcuff him, whatever they need to do, get him, make him stop biting them. But they're made, you know, they're not entitled to, you know, kick and punch and stomp and those sorts of things if the circumstances don't require that. Right. So we need to know the amount of force used, don't we? To some extent, yes. And the record shows a good deal. Actually, the record, even the internal, um, statements and affidavits, your, your officers are saying two different things. So let's just put, uh, um, Escobar, Escobar aside. One is saying that they used some pressure behind the ear. The other one is saying we pushed him in. Is that not a genuine issue of fact? Well, we've got two, essentially two uses of force. One, the initial taking Mr. Escobar down to the ground when he did not comply with the order to put his hands up on the wall. In the circumstances where the officers had been, had just found a knife sheath on his person, they had been told that he had a knife. I thought he indicated he was just slow to do that. Whether, okay. The record, Mr. Escobar's record, in the, uh, in the video trans, video and audio tapes transport, Mr. Escobar said something about they should not have taken me down to the ground, they shouldn't have used force. I just forgot to put my hands up. Okay. That sounds to me like an admission against interest. If he, if he was told to put his hands up on the wall and he didn't, that he did not comply with the officer's orders. He also introduced at the adjustment hearing, the testimony of his, uh, his cell buddy, Mr. Struss. Um, I believe this is at, at JA 70, Mr. Struss says, testifies, the officers asked him to put his hands up on the wall and then they took him down to the ground. So. But he never testifies, as I recall, that he didn't put his hands on the wall. He was slow to move. He just says, yeah, they asked him, then they took him down. There seems to be, I'm not sure that testimony helps you as much as you indicate. They asked him, they told him to put his hands up on the wall and he didn't. Instead, in Mr. Escobar's testimony at that adjustment hearing on JA 69, he states, I was taking off my shorts. And another, um, statement by Mr. Escobar at JA 268, um, he writes, he testifies, I'm sorry. No, he writes, I was about to undo my shorts. So the officers told him to put his hands up on the wall and he had his, he put his hands by his That is what the officers wrote in their, in their reports. And that is what Mr. Escobar has stated. Um, the circumstances were that. Opposing counsel says they're asking him to do two things at once. Well, they asked him to take off his clothes and he complied, um, those requests. He took off his shirt. I'm not sure if he had gotten his shorts off or the shorts that, I believe he had got, he took off his shorts and inside those shorts was a knife sheath. Uh, he then says he was going to take off his shorts. The officers say he put his hands by his crotch or by his waist. I presume this refers to his undershorts since he had already taken off the, the surface shorts. Your Honor, this is. If the district court, you know, found all these to be fact, then, I mean, it's a pretty easy case. But even if we assume that he was slow to the draw and putting his hands on the wall, you still have the question Judge Rushing raised, which is they get him to the ground and he says they just beat me, beat me, beat me and it was unnecessary. Why isn't that a material dispute of fact? One, one thing that the court had before it, the district court had before it was the record of his medical record. His medical records show. And he had injuries. Minor injuries. Your Honor, he had a bruise on the top of his head or the question of, of degree and fact that may not seem significant to some people, but, you know, I had a bruise on my head. I'd consider that fairly major. Your Honor, the injuries that Mr. Escobar did sustain were completely consistent with the use of force of just being taken down to the ground. And then the second use of force, which was justified by not only a threat to the safety of the officers, but not just a future risk, but a current threat. Mr. Escobar biting Officer Holland's forearm. He broke the skin. Officer Holland had to go to a hospital and go through decontamination treatment after that. The, at that time, the officer's use of force was, was completely appropriate. What was the use of force? Once again, back to my last question, I, I, based on the affidavits and what was provided during the internal investigation and also during the assault investigation, there are different stories as to what the use of force was at the time from the officers and in response to the bite. Your Honor, you're speaking of, I believe in one account, there's a statement that we might've been Officer Holland who said that he, he observed Officer Arendt put his hands on the, on Mr. Escobar's forehead. Mr. Correctional Officer Arendt testified something about putting his hands behind his ears. I don't see that as a, a, a material, a dispute of material fact, particularly as he may have likely have done both. I mean, the, the officer used force to stop this individual from biting his collar. How did he get the bruise on his, on the top of his head? Perhaps he got that when he fell to the ground. I, but, but aren't all those things issues of fact? Your Honor, they, they are issues of fact, but are they material facts that would justify a, a finding for the non-movement? The, the non-movement here has the burden of showing that the officer's actions were malicious, and with the, what is the, the Whitley Standard statistical? Yeah, but that's a factual determination. Right, and if it... You gotta have evidence for that. What, what you're saying is, well, this record taken in the light most favorable to the plaintiff can't show that regardless. That's what the district court found, and that is what the state of Maryland believes is the case here. What plaintiff's discovery request was, was basically a request for a fishing expedition. I would like to have more discovery. Right, well, that's a different question than whether or not there's a material, factual dispute about this actual incident. Well, the, the court must consider what facts are material before deciding that a dispute about any of these facts rises to the level of a genuine dispute, a material fact that would prevent its issuance of a grant of summary judgment. What we have here is a, a conclusory statement in the pleadings and in the, in the opposition. The opposition, unlike the complaint, is not verified. There is not an affidavit that Mr. Escobar submitted challenging any of the, any of the facts submitted by the correctional officers in the record. Because the, there is nothing in the record before the court that indicates that there was a use of force that was excessive in view of the threats facing the officers. The fight on the ground when the, when Mr. Escobar was biting Officer Holland. He's handcuffed at that time. No, he's not handcuffed. Okay, so when do, and we don't know, I, there's different, he says he was handcuffed at one point. They're saying it's another point. Wouldn't that once again be an issue of, a material issue of fact as to if he, if they, if they were malicious and sadistic? Well, he was not handcuffed while he was being searched. Well, he was not handcuffed at the time he was taken down to the ground and he immediately was in a fight with the officers and was biting Officer Holland. He was not handcuffed at that time and the record shows that after he was taken off of Officer Holland, so he was not biting him anymore, then the officers attempted to handcuff him. Their records show that they, that he resisted being handcuffed and a third officer arrived on the scene and assisted in handcuffing him. So no, the record does not include any indication that, that he was handcuffed at the time that the force at issue was used. All right, your time has expired. Is there anything else you want to tell us very, very briefly? I will submit on what I've stated so far, your honor, and I thank you very much. If the court has no further questions. Thank you very much. Ms. Lohmann, you're doing the rebuttal. Are you court appointed also, or are you a volunteer? Pro bono. Okay, thank you very much. Today, the officers have given this court no reason to depart from precedent in this court. We are here because there was a dispute of fact, many disputes of fact, as just evidenced by the officer's testimony. First, there was a dispute of fact about the compliance with the officer's orders. That compliance is evident in the officer's records themselves, in their declarations, in the records of events, and in the orders they were giving to Edwin himself. Edwin was told to put his hands on the wall, but at the same time take off his clothes. The officers dispute that this is not the case because he was having to take off his shorts and then have his hands on the wall. But in order to take off shorts, you have to take at least one hand off the wall to untie the shorts and take them off. It also makes sense that Edwin had his hands near his waist in order to take those shorts off. There's also information from cellmate Strauss on JA-70 that he saw the officers beating Edwin up, and Strauss says that they asked Edwin to put his hands on the wall, and then they punched Edwin on the ground, and they were choking him. There's no indication here that Edwin was disobeying orders and not being compliant, and Edwin himself said in his verified complaint that he had complied with their orders to put his hands on the wall when he could and to take off his clothes when he needed to. There is also a dispute of fact about the injuries that Edwin suffered in this case. There is evidence in the record that he continued to suffer from these injuries for months after the event. JA-210, he made his first sick call in July. JA-117, he had worsening pain later in July. JA-87, he continued to have shoulder and back pain at a provider visit at the end of July. JA-146, at a scheduled provider visit five months later, he continued to have shoulder and lower back pain. In December of 2017, he made another request because of neck pain that kept him from standing up or moving, and at JA-107 in January of the following year, he made a sick call because of neck and shoulder pain that persisted every day from injuries developed seven months prior. Additionally, Edwin here didn't have an opportunity to conduct discovery that would better support all these claims. Despite all of this evidence in the record, there's no evidence in the record that the video he requested does not exist. All that was given to Edwin was no record found as... To be clear, this is not an appeal from a prison grievance denial, right? So we're not reviewing the prison's response. That was not in a proceeding we are reviewing. He didn't request any discovery. He didn't request the video in the district court, right? That is correct. However, here there is precedent in this court that when discovery requests are made, there was a response that a video had been taped over, and that is why that cannot be provided. Edwin didn't have that opportunity to do that here because his discovery requests were denied. We were determined that the grant of summary judgment was inappropriate and reversed it, and he could ask for all the discovery he wants, couldn't he? That is correct. Here, however, this court has previously explained that such specificity is not needed. In Putney, in Pledger, and most recently this court this year provided in Jenkins in a similar case where an inmate did not make specific requests about what he wanted, discovery still should have been granted. This court said that that was needed and that on remand that discovery should be conducted. Additionally, Edwin didn't have counsel here. Counsel could have assisted with that. That also was a point that this court made in Jenkins that counsel could have... That is true, which is another reason that this case should be sent back, but this court should appoint counsel and should allow Edwin to engage in discovery because he would have that opportunity to curate the record in a way he wasn't allowed to here. The record was curated by the officers. Edwin didn't have the opportunity to see that discovery, to get those answers that would have provided more clarification on why certain information isn't provided in the record and to provide more information to show on his end why these contradictions were happening and why the officers here were not entitled to summary judgment. Additionally, the officers argue that there's no evidence that another video does exist. However, it is clear from the record on JA62, Edwin writes, the video from 8C rec and the video when I was at the doctor. Here, there is other evidence that Edwin could find if he was granted that opportunity to engage in... That is correct. All right. Your time has now expired. Is there something else you want to tell us very quickly? We just ask this court to reverse for the three reasons discussed earlier. Most importantly, we ask you, Romain, to allow Edwin to conduct discovery and direct counsel to assist him in endeavor. All right. Thank you very much. We'll come down and greet counsel, but I want to express the court's appreciation to you, Mr. Kratzer, for undertaking representation. In this case, as court appointed, we could not discharge our duties if members of the bar like you did not step up and assist needy parties in cases like this. So, we thank you very much, and we appreciate, Ms. Lohmann, your volunteer efforts here. So, we'll now come down and greet counsel and then go on to our third case.
judges: G. Steven Agee, Allison J. Rushing, DeAndrea Gist Benjamin